UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 07-20897-CR-HUCK

UNITED STATES OF AMERICA

Plaintiff,

vs.

MARIO SIMBAQUEBA-BONILLA

Defendant.

_____/

### DEFENDANT'S OBJECTIONS TO THE PRE-SENTENCE INVESTIGATION REPORT AND REQUEST FOR DEPARTURE PURSUANT TO USSG 5K2.0 and 5K2.13; AND REQUEST FOR ADDITIONAL TIME FOR HEARING

The Defendant, MARIO SIMBAQUEBA-BONILLA, by and through the undersigned counsel and pursuant to Federal Rule of Criminal Procedure 32 (b)(6)(B), files the following objections to the pre-sentence investigation report (PSI); request for downward departure pursuant to USSG §§ 5K2.0 and 5K1.13; and request for additional time at the sentencing hearing to allow for the testimony of Dr. Heather Holmes, and states as follows:

#### PROCEDURAL HISTORY

On November 15, 2007, the Defendant was charged in a 16 count indictment with conspiracy to commit access device fraud in violation of 18 U.S.C. 371 (Count 1); access device fraud in violation of 18 U.S.C. 1029 (a)(2) (Counts 2-7); identity theft in violation of 18 U.C.S. 1028(a)(7), & 1028(b)(1)(D) (Counts 8-11); and aggravated identity theft in violation of 18 U.S.C. 1028(A) (Counts 12-16).

On January 9, 2008, the Defendant entered a plea of guilty to all counts of the indictment. The Defendant is scheduled to be sentenced on March 19, 2008.

1

## OBJECTIONS TO THE PRE-SENTENCE INVESTEGATION REPORT

### Factual Objections

**PSI ¶ 14.** The Defendant objects to the allegation in the PSI that he "stole and/or diverted approximately $900,000 in funds."

**PSI ¶. 16.** The PSI mentions the fact that upon his arrest at the Miami International Airport the Defendant initially exercised his right to remain silent, however, the Defendant objects to the omission of the facts that shortly thereafter the Defendant signed a Permissive Authorization for Search and Seizure of his computer, thumbdrive, floppy disk and IPod; and that the Defendant met with the government several times for de-briefings prior to the filing of the indictment.

**PSI ¶ 17.** The Defendant objects to the allegations in paragraph 17 of the PSI that he "diverted approximately $900.000 in funds;" the government's calculation of "an additional $900,000 in intended loss;" and "a total loss for guidelines purposes of approximately $1,800,000."

**PSI ¶ 18.** The Defendant generally objects to the factual allegations in paragraph 18 of the PSI, in support of the probation officer's assessment that the Defendant should receive a 4 level role enhancement, and that the Defendant is accountable for a loss, including an intended loss, of more than $1,000,000 but less than $2,500,000.

**PSI ¶ 21.** The Defendant objects to the allegation that the government has identified 98 victims.

**PSI ¶ 44.** The Defendant objects to the allegations in paragraph 44 of the PSI that the Defendant was sentenced for Theft of Services on October 22, 2004. The incident involved a minor incident at a motel when the Defendant was intoxicated. The charged was reduced to an ordinance violation.

**PSI ¶ 60.** The statement in paragraph 60 is incorrect in that it states the defendant is "not taking any prescription medications." The defendant is taking lithium and an anti-depressant substitute for Wellbutrin while incarcerated.

## OBJECTIONS TO THE APPLICATION OF THE ADVISORY GUIDELINES

### Offense Level Computation

**PSI Para 14, 17, 18 & 31. Amount of Loss.** The Defendant objects to the probation officer's assessment that the offense level should be increased by 16 levels pursuant to §2B1.1(b)(1)(I), because he "is accountable for a loss, including intended loss, of $1.8 million. This total loss, derived from adding $900,000 in funds that the Defendant "diverted" with "an additional $900,000 in intended loss," is erroneous. PSI ¶ 17.

Pursuant to the guidelines, "loss is the *greater of* actual loss *or* intended loss." USSG §2B1.1, comment, n.3(A). (emphasis added). Here, contrary to the guidelines, the government's calculation of the loss is the *sum of* their actual *and* intended loss figures. Thus, even assuming for argument that the government's loss figures are correct, the loss for guidelines purposes would be $900,000. This would increase the Defendant's offense level by 14, not 16.

In any event, it is the government's burden to support its conclusion regarding the amount of loss with reliable and specific evidence. *United States v. Renick*, 273 F.3d 1009,1025 (11th Cir. 2001) (per curiam). Mere conclusory statements in the pre-sentence report, or by the prosecutor at sentencing, are not sufficient to sustain this burden. *United States v. Lawrence*, 47 F.3d 1559, 1567-68 (1995). Here, the conclusion in the PSI that the total loss is $1.8 million is based on bare allegations of the government.

Since the disclosure of the PSI, however, the government has provided additional discovery concluding an actual loss of $437,810.42; an intended loss of $789,982.77, and an additional potential loss of $800,354.57. The government added these amounts and is now claiming a total loss of $2,028,147.70 . These actual loss figure is inaccurate. The intended and potential loss calculations are speculative and overstated.

The Defendant maintains that the actual loss is $382,471.02. The government's calculations on actual loss include some attempted loss in addition to an incident that occurred in 2001[1], wherein "Neyla Valero opened an account at WMBFA/WMBFA (WAMU) and deposited checks that were later NSF." This particular incident occurred 3 years prior to the beginning of the conspiracy and should not be included.

---

[1] The government's spreadsheet does not include dates, however, the additional discovery provided by the government on March 5, 2008 includes the Suspicious Activity Report (SAR) for this incident.

3

The government's intended loss figures are grossly inflated. This is not a case concerning a credit card bust out scheme[2] where it may be appropriate to assign maximum credit limit as intended loss. *United States v. Uyaniker*, 184 Fed. Appx. 856 (11th Cir. 2006).

A sentencing court must make factual findings sufficient to support the government's claim of the amount of fraud loss attributed to a defendant in a PSI. *See United States v. Butler, 41 F.3d 1435, 1442 (11th Cir.), cert. denied, 514 U.S. 1121, 115 S. Ct. 1987, 131 L. Ed. 2d 874 (1995); United States v. Cabrera*, 172 F.3d 1287, 1294 (11th Cir. 1999) (holding that the amount of fraud loss attributable to a defendant in a telephoning cloning fraud case must provide reliable proof linking the defendant to the combinations fraudulently used – even where defendant admitted he possessed the equipment used).

The necessity of requiring reliable evidence is particularly manifest in cases, such as this, where the quantity of [loss] attributed to a defendant can have a marked impact on the length of his sentence. *United States v. Lawrence*, 47 F.3d 1559, 1556 (1995).

Moreover, the additional $800,354.57 of potential loss amount based on a spreadsheet containing personal information for accounts at several banks is purely speculative. The government's report states that these were stored for "apparent future use." Mere speculation regarding "apparent future use" and should not be used to calculate a more severe sentence. *United States v. Dominguez*, 109 F.3d 675 (11th Cir. 1997) (district court may not speculate about facts which would permit a more severe sentence under the guidelines); *United States v. Norton*, 176 Fed. Appx. 992 ((11th Cir, 2006) (district court sustained objections to loss in bank fraud case involving ATM access as too speculative).

Based on the foregoing, the Defendant maintains that the loss amount for guideline purposes is the actual loss of $382,471.02 because a reliable and specific intended loss is not ascertainable. This is an increase of 12 levels.

---

[2] A credit card bust out scheme is where a person obtains credit cards in someone else's name, makes minimum payments, obtains increased credit limits, and then when he can charge no more, charges the limit and vanishes.


**PSI Para 32. Number of Victims.** The Defendant objects to the probation officer's assessment that the offense level should be increased by 4 levels for more than 50 victims pursuant to §2B1.1(b)(2)(B).

A victim is defined as "any person who sustained any part of the actual loss determined under subsection (b)(1)." USSG 2B1.1 (n. 1). Actual loss is the "reasonably foreseeable pecuniary harm that resulted from the offense." USSG 2B1.1 (n. 3(a) i). Pecuniary harm means harm that is "monetary." USSG 2B1.1 (n. 3(A) iii). Thus, a victim is a person who sustained actual monetary harm.

According to the PSI, "the Government has identified 98 victims who sustained a part of the actual loss." Since the disclosure of the PSI, however, the government has provided discovery including a spreadsheet listing 56 victims. Of the 56 victims listed on the government's spreadsheet, many suffered no actual monetary harm. Therefore, they are not victims within the meaning of the guidelines. Indeed, the preface to the government's spreadsheet states, "[t]he following table shows the $437,810.42 of actual dollar harm broken out by each of the 42 unique victims." This discrepancy is explained by the subtracting the 14 victims included on the list with an asterisk because they suffered no actual harm.[3] (Exhibit 1).

Of the 14 victims listed with an asterick, the 11 DFAS employees suffered no loss. The actual loss was suffered by DFAS when their payroll was diverted. DFAS subsequently reissued the pay to the employees.

There are additional victims listed that are not victims within the meaning of the guidelines. For example, Fifth Third Bank and Floor Style Products are listed separately as victims each suffering an actual loss of $9, 399.38. This is not accurate. According the Fifth Third Bank, the total loss of $18,789.76 was suffered by Floor Style products. [4] Fifth Third Bank suffered no loss. Nonetheless the government split the loss between Fifth Third and Floor Style Products thereby producing 2 separate victims. (Exhibit 2).

Jet Blue is also listed as a victim who suffered an actual loss of $478.40. However, this transaction was declined and no tickets were issued. Jet Blue suffered no actual loss. (Exhibit 3). Similarly, Thai Airways, Tigerdirect.com, and Educators Credit Union are listed as victims

---

[3] Victims listed with asterisks are: Ameritrade, Fidelity, Cherie Roger, Ismal Perez, Brian Dupre, Elizabeth Branham, Christopher Epperson, Donell Stewart, Cherise Stewart, TY Butcher, Michael Bennet, Charles Woods, Darryl Richard.

[4] The letter from Fifth Third Bank was included in the government's discovery.

suffering an actual loss of $596.56, $385.19, and $2501.43 respectively, however, these transactions were cancelled.

The following merchants are also included in the government's list of 56 victims:

| | |
|---|---|
| Staples | $13.04 |
| Walgreens | $ 2.74 |
| McDonalds | $ 9.41 |
| Enagic | $4,308.35 |

These merchants are erroneously listed as "victims," because they are swiped transactions. Neither the Defendant nor the co-defendant ever physically possessed a Discover Card. Clearly, the Defendant did not purchase a Big Mac over the internet.

The following are transactions that were not initiated by the Defendant:

| | |
|---|---|
| Amoco Oil | $ 20.60 |
| Chevron | $ 13.42 |
| Exxon Mobile | $ 24.20 |
| USA People Search | $259.65 |
| Girls Gone Wild | $ 29.95 |
| Apple ITunes | $ 28.92 |

The government's list of 56 victims also includes Ameritrade, $4.17, Discover Card $ .99, and Lanchile Air, $100.00. The losses from each of these merchants are either "interest of [some] kind, finance charges, late fees, penalties, amounts based on an agreed-upon return or rate or return, or other similar charges." USSG 2B1.1 (n. 3(D). These types of losses are explicitly excluded from the guidelines loss calculation. *Id.* Thus, are not victims for purposes of guideline calculation.

In this case, over 90% of the loss was sustained by 5 corporate victims: E-Trade, Chase Credit Card, Citibank, American Airlines, and American Express. Nonetheless, the victim count has been stretched to over 50 victims.

Based on the foregoing, the Defendant maintains that the offense level should be increased by 2 levels for more than 10, but less than 50 victims; not 4 levels for more than 50 victims pursuant to §2B1.1(b)(2)(B).

**PSI Para 33. Outside the U.S., or, Sophisticated Means**

The Defendant objects to the probation officer's assessment that the offense level should be increased by 2 levels pursuant to §2B1.1(b)(9)(B) because the offense was sophisticated or a substantial part was committed outside the United States. Neither applies. First, this offense was not sophisticated in that the means used was a commercially available software that copies keystrokes. Any person, or average child, with common knowledge of computer use could buy and install this software. As U.S. Attorney, R. Alexander Acosta stated, "I wish this was a complex scheme, but it was breathtakingly simple." MIAMI HERALD, January 10, 2008.

Second, the offense was not substantially committed from outside the United States. Almost all the hotels, where commercial software was installed, were in the United States. All transactions were conducted in the United States. All transfers were from one point in the United States to another point in the United States. The offense involved access devices issued within the United States by institutions and companies located within the United States. Therefore, the offense was substantially committed within the United States and the two level enhancement pursuant to §2B1.1(b)(9)(B) does not apply.

**PSI Para 34. 18 U.S.C. 1030**

The Defendant objects to the probation officer's assessment that the offense level should be increased by 2 levels pursuant to §2B1.1(b)(14)(A)(i). The plain language of this guideline section states that this enhancement applies, "if the defendant was *convicted* of an offense under: 18 U.S.C. 1030…"(emphasis added). Here, 18 U.S.C. 1030 is not an offense of conviction. The offense of conviction is 18 U.S.C. 371.

Moreover, this enhancement would constitute impermissible double counting. Pursuant to Application Note 2, §2B1.6, "if a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for the transfer, possession, or use of a means of identification when determining the sentence for the underlying offense," because, " a sentence under this guideline accounts for this factor or the underlying offense."

**Role Assessment**. PSI p.8, ¶ 19, PSI p.9, ¶ 17. The Defendant objects to a 4 level increase pursuant to § 3B1.1(a) based on the probation officer's assessment that the Defendant was the organizer or leader of an otherwise extensive organization.

Pursuant to § 3B1.1(a), a 4 level role enhancement is applied "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." In order for the enhancement to apply, the government must show that the Defendant was in a leadership role and the offense involved five or more participants, or, that the Defendant was a leader and the offense was otherwise extensive. See *United States v. Yates*, 990 F.2d 1179 (11th Cir. 1993) (government must show that the defendant had both a leadership role and that there was an extensive operation).

A 'participant" is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." USSG §3B1.1 note 1. In this case, Neyla Alexander Valero is the only other person who is criminally responsible for the offense. Valero is currently a fugitive from justice. "Neither her role in the offense nor her loss amount can be determined at this time." [5]PSI ¶ 19.

The assessment that the Defendant was the leader of the offense and/or recruited Valero is speculative and conclusory. There is no proof that the Defendant recruited and or directed Valero in her activities. Thus, he should not be assessed an aggravating role. *United States. v. Glover*, 179 F.3d 1300 (11th Cir. 1999) (finding that in order for enhancement to apply defendant must supervise a participant in the conspiracy).

In the alternative, even assuming that the Defendant directed or recruited Co-Defendant Valero, the organization consisting of two people, the Defendant and his wife, was not otherwise extensive. Similar cases of fraud and identity theft involving less that 5 participants have assigned a 2 level enhancement for a leadership role. *United States v. Agbai*, 497 F.3d 1226 (11th Cir. 2007) assigning a base offense level 6, 12 points for a loss of $304,318, 2 points for the use of unlawful means of identification, and 2 points for leadership role in the offense where defendant pled guilty to bank fraud and 5 counts of credit card fraud).

Indeed, identity theft cases involving much greater loss amounts have assigned 2 level role enhancements where the organization involved less than 5 participants. See *United States v. Abiodun*, 442 F.Supp. 88 (S.D.N.Y. 2006) (2 level role enhancement applied to defendant

---

[5] The government's spreadsheet on losses includes over $9,000 in

involved in a massive identity theft ring responsible for theft of credit card information for tens of thousands of individuals and tens of millions of dollars). *In United States v. Carralero*, 195 Fed.Appx. 875 (11th Cir. 2006), a conspiracy to traffic in access devices case, also involving a husband and wife, and others, this Court assessed a 2 level role increase for Mr. Carralero based on evidence that he recruited waitresses. That case involved 112, 204 access devices and $7 million in losses. Accordingly, the instant cause was not otherwise extensive.

**GROUNDS FOR DEPARTURE**

**Dininished Capacity. 5K2.13**

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity, and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the offense.

§ 5K2.13.

For purposes of this policy statement--

"Significantly reduced mental capacity" means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) *control behavior that the defendant knows is wrongful*. (emphasis added). USSG 5K2.13 (n.1).

The Defendant, in this case, suffers from a Bi-Polar disorder that greatly contributed to his criminal activity." Psychological Evaluation, Dr. Heather Holmes, Psy.D. (Exhibit 4). Although the Defendant knew his actions were wrong, his disorder greatly contributed to his ability to control his behavior. Dr Holmes report, attached as Exhibit 5, and incorporated by reference details the Defendant's diagnosis. Based on this diminished capacity, the Defendant is requesting a 4 level departure from the advisory guidelines range. See *U.S. v. Lighthall*, 389 F.3d 791 (8th Cir. 2004) (upholding twenty month departure from the bottom of the guidelines in possession and distribution of child pornography case where district court properly considered defendant's diminished capacity claim based on obsessive compulsive disorder); *See also United States v. Sadolsky*, 234 F.3d 938 (6th Cir. 2000) (upholding a 2 level downward departure in computer fraud case where district court found diminished capacity due to gambling disorder). Indeed, a bi-polar

9

disorder has been found to support an insanity defense. *United States v. Brems*, 2007 WL 1225382 (M.D. Fla. 2007) (finding defendant not guilty by reason of insanity because his bi-polar affective disorder was symptomatic when he disrupted airport services and endangered safety at international airport). Thus 5K2.13 is targeted at offenders who demonstrate "a significantly impaired ability to …control behavior that the defendant knows is wrongful."

**Extraordinary Acceptance of Responsibility. 3E1.1, 5K2.0**

Section 5K2.0 anticipates the presence of exceptional factors in certain cases and provides that:

> The sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

Section 5K2.0 reads in pertinent part:

> [T]he court may depart from the guidelines, even though the reason is taken into consideration in determining the guideline range (e.g. as a specific defense characteristic or *other adjustment*), if the court determines that, in light of unusual circumstances, the weight attached to that factor under the guidelines in inadequate… and the factor is present to a degree substantially in excess of that which is ordinarily involved. (emphasis added).

*See United States v. Carey*, 895 F.2d 318, 323 (11th Cir. 1990) ("Under § 5K2.0, the Guidelines allow a court to increase the two-level reduction given the defendant for his acceptance of responsibility if the court determines that "unusual circumstances" exist and the circumstance is "present to a degree substantially in excess of that which is ordinarily involved."); *United States v. Stewart*, 154 F. Supp. 2d 1336, 1343 (E.D. Tenn. 2001) (concluding that extraordinary acceptance of responsibility is not among the listed discouraged or forbidden factors, allowing a conclusion that the guidelines do not explicitly discourage departure on this basis).

In this case, shortly after the Defendant was arrested, he signed a Permissive Authorization for Search and Seizure of his computer, thumb drive, floppy disk and I-Pod. In addition, the Defendant met with the government approximately five times for de-briefings prior to the filing of the indictment. Without the benefit of cooperation agreement, the Defendant attempted to explain his activities to the government.

In addition the Defendant has been contacted by CNN and iDTELi, a company that provides identity theft awareness, and is willing to interview with both CNN and iDTEi to provide information that would assist in identity theft prevention. (Exhibit 5).

Accordingly, the Defendant's cooperation could be categorized as more than the "usual circumstances" wherein a Defendant enters into a plea agreement and is awarded with acceptance of responsibility, a reduction for cooperation, and a dismissal of numerous counts of the information. Additionally, the fact that the Defendant was debriefed by the government several times prior to the filing of the indictment is "substantially in excess of that which is ordinarily involved" in qualifying for acceptance of responsibility. *United States v. Carey*, 895 F.2d 318, 323 (11th Cir. 1990); *see also U.S. v. Rothberg*, 222 F.Supp. 2d 1009 (N.D. Ill. 2002) (where defendant pled guilty without plea agreement, and where, despite the government's refusal to file a motion for downward departure, defendant continued to cooperate with the government, and where, in doing so, he put himself at risk of a significant detriment: without a plea agreement, there was nothing to prevent the government from using the information he provided against him at sentencing, defendant's efforts show acceptance of responsibility that is outside the heartland of §3E1.1, with other factors, warranted two level additional departure).

Accordingly, the Defendant is requesting an additional 1 level decrease for his a-typical acceptance of responsibility.

### RESULTING APPLICATION OF THE ADVISORY GUIDELINES

Accordingly, the Defendant respectfully contends that the application of the advisory guidelines include:

| | |
|---|---|
| Base offense level under 2B1.1 | 6 |
| Loss greater that $400,000 but less than $1 million | 12 |
| 10, but less than 50 victims pursuant to §2B1.(b)(2)(B); | 2 |
| Acceptance of responsibility; §3E1.1(a); 3E1.1(b) | -3 |
| Additional 1 level for acceptance, 5K2.0 | -1 |
| Diminished Capacity, 5K2.13 | - 4 |

This yields a total offense level of 12. The resulting advisory guideline range in criminal history category I is 10 to 16 months, plus a mandatory 24 month consecutive sentence pursuant to 18 U.S.C. 1028(A). The resulting aggregate sentence is 34 to 40 months incarceration.

11

WHEREFORE, the undersigned counsel respectfully requests that the Defendant's objections to the PSI be granted.

Respectfully submitted,

LAW OFFICES OF WHITE, WHITE & ASSOCIATES
SUITE 200 – THE WHITE BUILDING
ONE NORTHEAST SECOND AVENUE
MIAMI, FL 33132
(305)-358-1100 Telephone
(305) 358-2503 Telecopier

By: _____ FBN: 10199
JAY A. WHITE
Fla. Bar No.: 717850

I HEREBY CERTIFY that on March 10, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

By: _____
JAY A. WHITE
Fla. Bar No.: 717850

12