UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 07-20897-CR-HUCK

UNITED STATES OF AMERICA

    Plaintiff,

vs.

MARIO SIMBAQUEBA-BONILLA

    Defendant.

_____/

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, MARIO SIMBAQUEBA-BONILLA, by and through the undersigned counsel, files the following sentencing memorandum outlining 18 U.S.C. 3553 factors for consideration by this Honorable Court:

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the punishment to ensue." *Gall v. United States*, 128 S.Ct. 588, 591 (2007) *citing Koon v. United States*, 518 U.S. 81, 113; 116 S.Ct. 2035.

Although a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range, the guidelines are not the only consideration. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may

1

not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. *Gall v. United States*, 128 S.Ct. 588, 591 (2007) (citations omitted).

Section 3553(a) lists seven factors that a sentencing court must consider. Preceding this list is a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing described in the second factor. § 3553(a). Practical considerations underlie this legal principle. "The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. Id. (citations omitted).

Section 3553(a) factors are:

>  **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>  **(2)** the need for the sentence imposed--
>  >  **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>  >  **(B)** to afford adequate deterrence to criminal conduct;
>  >  **(C)** to protect the public from further crimes of the defendant; and
>  >  **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>  **(3)** the kinds of sentences available;
>  **(4)** the kinds of sentence and the sentencing range established in the guidelines for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines.
>  **(5)** any pertinent policy statement—issued by the Sentencing Commission
>  **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>  **(7)** the need to provide restitution to any victims of the offense.

## NATURE AND CIRCUMSTANCES OF OFFENSE AND THE
## HISTORY AND CHARACTERISTICS OF DEFENDANT

Mario Simbaqueba-Bonilla stands before this Court, at 40 years old, as a first time offender. He is charged in a conspiracy with his wife, Co-Defendant Neyla Alexander Valero, to commit access device fraud, access device fraud, identity theft, and aggravated identity theft.

Mr. Simbaqueba-Bonilla was born and raised in Bogota, Colombia. He is the eldest of two sons. He graduated college and has a degree in electrical engineering. His parents, who have been married for over forty years, are hardworking and respected citizens in their community. Friends and neighbors think of Mr. Simbaqueba-Bonilla as a kind and thoughtful man. (Exhibit 1.)

Until now, no one in the Simbequeba Bonilla's family has had any involvement with the criminal justice system. Thus, Mr. Simbequeba-Bonilla's family and friends are struggling to understand how he became involved in criminal activity.

Mr. Simbequeba has a bi-polar disorder that appears to have manifested in his twenties. Due to insufficient treatment this disorder worsened and was a contributing factor to the Defendant's criminal conduct.

To determine the extent that psychological problems contributed to Mr. Simbaqueba-Bonilla's criminal activity, the defense retained Heather Holmes, Ph.D., a forensic clinical psychologist, to perform a forensic evaluation. In addition to interviewing the Defendant, Dr. Holmes also spoke to his family, former psychiatrist, Dr. Tellez, and reviewed medical records.

Dr. Holmes reports Mr. Simbaqueba-Bonilla's psychiatric history as supporting a diagnosis of bipolar disease:

3

> Mr. Simbaqueba reported periods of at least seven days where he felt "on top of the world" and was unable to sleep. He stated that he began to feel this way when he was in college. The typical onset for this disorder is late teens to mid-twenties. The descriptions of his multiple business successes and then his lavish spending sprees are again typical of those in a manic episode of Bipolar Disorder. These outlandish behaviors, such as the spending sprees, impulsive decisions (e.g. dropping out of graduate school, purchasing a new car), and deep depressions in which he would binge drink were documented by his psychiatrist, Dr. Tellez and were noticed by his parents and reportedly were the reason he was unable to maintain any of his marriages.
> Mr. Simbaqueba went almost 36 years without engaging in criminal activity. He was able, until that time, to fund his manic phases… he was able to fund the pleasurable activities that are commonly sought during a manic phase. However, Mr. Simbaqueba had to file bankruptcy in Colombia. Thus, when he returned to his country in 2003, he was broke and unable to even open a checking account. It was shortly afterwards that Mr. Simbaqueba began engaging in the criminal activity that has led to his current detainment.

Dr. Holmes concluded that Mario's mental illness contributed greatly to his criminal activity. Nonetheless, the Defendant understands what he did was wrong and is ashamed for his behavior.

Regardless of whether Mr. Simbaqueba-Bonilla's bipolar disorder is a sufficient basis for a guideline departure under USSG § 5K2.13, it is a valid mitigating factor under 18 U.S.C. 3553(a).

## THE NEED FOR THE SENTENCE IMPOSED

The general directive to preceeding the list of 3553 factors is to "impose a sentence sufficient, but not greater than necessary, to comply with § 3553(a)(2), i.e. the need for the sentence imposed: **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; **(B)** to afford adequate deterrence to criminal conduct; **(C)** to protect the public from further crimes of the defendant; and **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In this case, the Mr. Simbaqueba-Bonilla is a first time offender who has never spent time in prison. He is not convicted of a crime of violence. Prison time would have a greater impact on Simbaqueba than to a defendant that has previously been imprisoned. Thus, an aggregate sentence of 3 to 4 years, is sufficient, but not greater than necessary reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense; and to afford adequate deterrence to criminal conduct. See *United States. v. Baker*, 445 F.3d 987 (7th Cir. 2006) (upholding sentence 21 months below the bottom of the advisory guidelines range in possession and distribution of child pornography case where district court properly considered 3553 factors including the defendant's lack of criminal history, employment history, higher education, and district courts finding that a prison term would mean more to Mr. Baker than to a defendant who previously had been imprisoned).

When the Defendant is released from prison, his family is committed to helping him get appropriate psychiatric supervision for his bipolar disease and psychological counseling to learn how to manage this disease. He will also benefit from Alcoholics Anonymous to remain in remission for alcoholism.

## SENTENCING RANGE ESTABLISHED BY THE GUIDELINES

Notwithstanding the Defendant's Objections to the PSI, the guideline sentence, as calculated in the PSI, fails to take into account the congressional directive that the purpose of the sentencing commission includes maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating factors... and to reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice system.  18. U.S.C. §991(b).

Here, even assuming for argument that the PSI guideline calculations are correct, they include all conceivable enhancements and aggravators while excluding from consideration any mitigating factors pursuant to 3553(a).  Moreover, the assessed enhancements are little more than different ways of characterizing closely related aspects of Simbaqueba-Bonilla's fraudulent credit card scheme.  The combined effect of these enhancements result in a sentence more akin to a drug kingpin, or a defendant charged with a violent crime, than to a first time offender. See *United States v. Jackson*, 346 F.3d 2 (2nd Cir. 2003) (in credit card fraud, multiple overlapping enhancements can justify a downward departure – enhancements are little more than different ways of characterizing closely related aspects of Jackson's fraudulent scheme.); See *United States v. Adelson*, 441 F. Supp. 2d 506 (SDNY 2006)  the combined effect of an added points …. Represents the kind of "piling-on" of points for which the guidelines have frequently been criticized); *United States. v. Gigante*, 94 F.3d 53, 56 (2d Cir. 1996) downward departure authorized where substantially enhanced range results from series of enhancements proven only by preponderance of the evidence).

6

## PERTINENT GUIDELINES POLICY STATEMENTS

To understand [the] guidelines and the rationale that underlies them, one must begin with three objectives that Congress…sought to achieve. Its basic objective was to enhance the ability of the criminal justice system to reduce crime through an effective, fair sentencing system. To achieve this objective, Congress sought <u>honesty</u> in sentencing, <u>uniformity</u> in sentencing, and <u>proportionality</u> in sentencing.   §1A1.1 The Basic Approach (Policy Statement)

Honesty was easy to achieve:  The abolition of parole makes the sentence imposed by the court the sentence the defendant will receive.

Congress sought uniformity in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct by similar criminal offenders.  Third, Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity. Inconsistent application of GL enhancements for similar crimes.  Id.  See also §1A1.1 Sentencing Range (Policy Statement) 4.g.  (rational behind guideline sentence was to help eliminate wide disparity in sentencing).

Despite these Congressional objectives, in practice, the guidelines do not produce uniformity or proportionality in sentencing.

The Pre-sentence Investigation Report (PSI) prepared by the probation officer is given considerable difference by the judge at sentencing.  However, these reports are subject to the probation officer's attitude toward both the client and the crime, and are sometimes, as in this case, based on bare allegations of the government.  Here, the probation officer enhanced the Defendant's base offense level by 16 levels based on the

7

government's bare allegation that the actual loss was $900,000 and the intended loss an additional $900,000, for a total loss of $1.8 million.

The Commission has determined that ordinarily the sentences of defendants convicted of federal offenses should reflect the nature and magnitude of the loss caused or intended by their crimes. Accordingly, along with other relevant factors under the guidelines, loss serves as a measure of the seriousness of the offense and the defendant's relative culpability and is a principal factor in determining the offense level under this guideline. Background USSG §2B1.1 Backgrround Note. Therefore, a 16 level enhancement should never be based on the bare allegation of the government. Especially, where, as here, the government's loss calculations are inconsistent and unreliable.

Second, both the government and the probation office are inconsistent in assessing guideline enhancements for similar defendants charged with similar crimes. In *United States v. Carralero*, 195 Fed. Appx. 875 (11th Cir. 2006), the presentence investigation report (PSI) found that:

> Carralero was responsible for 112,204 unauthorized access devices and further identified at least 20 corporate victims. Each unauthorized device was assessed a loss value of $500, for a total loss amount of $56,102,000. The PSI set Carralerro's base offense level at 6, pursuant to U.S.S.G. § 2B1.1(a). Next, relevant to the appeal, Carralero was assessed a 24-level enhancement because the amount of loss was greater than $50 million, but less than $100 million, pursuant to U.S.S.G. § 2B1.1(b)(1)(M). Carralero was also assessed a two-level enhancement because the offense involved 10 or more victims, U.S.S.G. § 2B1.1(b)(2)(A); and a two-level enhancement U.S.S.G. § 2B1.1(b)(2)(A) for possession of device making equipment. Carralero total offense level was set at 33. Carralero's criminal history placed him in **category III**, which, at offense level 33, provided for an advisory sentencing range of 168 to 210 months' imprisonment.

Neither the PSI nor the prosecutor assessed Carralero a 4 level role enhancement. Notwithstanding that Carralero's offense involved a much larger number of credit card devices – over 112,000 credit card devices and over 50 millions dollars in losses according to the position of the government and the PSI. See also *United States v. Agbai*, 497 F.3d 1226 (11th Cir. 2007) assigning a base offense level 6, 12 points for a loss of $304,318, 2 points for the use of unlawful means of identification, and 2 points for leadership role in the offense where defendant pled guilty to bank fraud and 5 counts of credit card fraud); *United States v. Abiodun*, 442 F.Supp. 88 (S.D.N.Y. 2006) (2 level role enhancement applied to defendant involved in a massive identity theft ring responsible for theft of credit card information for tens of thousands of individuals and tens of millions of dollars).

Thus, the subjectivity inherent in assessing and applying guideline enhancements by the probation officer and government creates disparity in sentencing. See *United States v. Quinn*, 472 F. Supp 104, 111 (D. Mass. 2007) the judge identified a "structural problem" in the relevant conduct rule as demonstrated by two different probation officers "calculating" ranges of 37-46 months and 151-188 months for two identically-situated defendants in the same case.

### THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES

As previously stated, the subjectivity inherent in assessing guideline enhancement, themselves, can create disparities. Thus, the "uniform and constant" tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the punishment to ensue" is the best assurance of a just sentence that takes into account all

9

the factors set forth in 18 U.S.C. 3553(a). *Gall v. United States*, 128 S.Ct. 588, 591 (2007) *citing Koon v. United States*, 518 U.S. 81, 113; 116 S.Ct. 2035.

Based on the foregoing, the undersigned counsel respectfully requests that the this Honorable Court impose the following that is sufficient, but not greater than necessary to achieve the purposes of !8. U.S.C. 3553:

1. An aggregate prison term of 34 – 40 months ( 10-16 months + 24 months (mandatory)
2. Mandatory mental health counseling
3. Alcohol Counseling
4. Restitution

Respectfully submitted,

LAW OFFICES OF WHITE, WHITE & ASSOCIATES
SUITE 200 – THE WHITE BUILDING
ONE NORTHEAST SECOND AVENUE
MIAMI, FL 33132
(305)-358-1100 Telephone
(305) 358-2503 Telecopier

By: _____
JAY A. WHITE
Fla. Bar No.: 717850

I HEREBY CERTIFY that on March 15, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

By: _____
JAY A. WHITE
Fla. Bar No.: 717850

10