# United States Court of Appeals

Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia  30303

**John Ley**
Acting Clerk of the Court

For rules and forms visit
www.ca11.uscourts.gov

FILED by _____ D.C.

JAN 2 6 2010

STEVEN M. LARIMORE
CLERK U. S. DIST CT
S. D. of FLA – MIAMI

January 22, 2010

Steven M. Larimore
Clerk, U.S. District Court
400 N MIAMI AVE RM 8N09
MIAMI FL 33128-1813

**Appeal Number: 08-12127-EE**
Case Style: USA v. Mario Alberto Simbaqueba Bonilla
District Court Number:  07-20897 CR-PCH

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

John Ley, Acting Clerk of Court

Reply To: James O. Delaney (404) 335-6113

Encl.

MDT-1 (06/2006)

# United States Court of Appeals
## For the Eleventh Circuit

No. 08-12127

District Court Docket No.
07-20897-CR-PCH

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Aug 18, 2009

THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIO ALBERTO SIMBAQUEBA BONILLA,
a.k.a. Mario Simbaqueba,
a.k.a. Mario Gaona,
a.k.a. Mario S. Bonilla,
a.k.a. Alberto Gaona,
a.k.a. Mario Simba,
a.k.a. Mario Simbaqueba Bonilla,
a.k.a. Mario Bsimbaqueba,
a.k.a. Mario Csimbaqueba,
a.k.a. Mario Psimbaqueba,
a.k.a. Mario Bonilla Simbaqueba,
a.k.a. Mario Ssimbaqueba,
a.k.a. Mario Alberto Simbaqueba,

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

Defendant-Appellant.

------------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Florida
------------------------------------------------------------------

## J U D G M E N T

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered:      August 18, 2009
For the Court:   Thomas K. Kahn, Clerk
By:   Gilman, Nancy



ISSUED AS MANDATE
JAN 22 2010
U.S. COURT OF APPEALS
ATLANTA, GA.

CORRECTED

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 08-12127

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 18, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-20897-CR-PCH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIO ALBERTO SIMBAQUEBA BONILLA,
a.k.a. Mario Simbaqueba,
a.k.a. Mario Gaona,
a.k.a. Mario S. Bonilla,
a.k.a. Alberto Gaona,
a.k.a. Mario Simba,
a.k.a. Mario Simbaqueba Bonilla,
a.k.a. Mario Bsimbaqueba,
a.k.a. Mario Csimbaqueba,
a.k.a. Mario Psimbaqueba,
a.k.a. Mario Bonilla Simbaqueba,
a.k.a. Mario Ssimbaqueba,
a.k.a. Mario Alberto Simbaqueba,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Florida

---

(August 18, 2009)

Before BARKETT and FAY, Circuit Judges, and TRAGER,[*] District Judge.

FAY, Circuit Judge:

Mario Alberto Simbaqueba-Bonilla ("Bonilla") appeals the district court's imposition of a 108 month sentence. Bonilla pled guilty to 16 counts of conspiracy, access device fraud, identity theft, and aggravated identity theft. On appeal, Bonilla asserts that his plea was constitutionally invalid and that the subsequent sentence imposed was unreasonable and therefore should be vacated.

Specifically, Bonilla asserts that (i) the plea is invalid because the court failed to advise him of the consequences of his plea; (ii) the indictment was multiplicitous and violates the double jeopardy clause of the Constitution; (iii) the court failed to make a finding of a multi-object conspiracy; (iv) the court improperly determined the amount of loss; (v) the court erred by imposing multiple consecutive sentences; and (vi) the court's pronouncement of the sentence was ambiguous and varied materially from the order of judgment.

---

[*] Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation.

2

We reverse only on the second issue and affirm as to all other claims.  We hold that the indictment is multiplicitous and violative of the double jeopardy clause.  We therefore vacate the convictions and sentences for the four counts of identity theft and modify the judgment accordingly.

## I. BACKGROUND

From approximately June 9, 2004 through August 31, 2007 Bonilla and his wife, Neyla Alexandra Valero, installed software at the business centers of approximately 25 hotels in the United States and overseas, allowing them access to hotel guests' personal and financial information.  Bonilla and his wife used this information to unlawfully create and use credit cards, debit cards, pre-paid cards, and bank and investment accounts for their benefit without the hotel guests' knowledge or approval.

Bonilla was apprehended in August 2007 and subsequently indicted for 16 separate counts: conspiracy to commit fraud in violation of 18 U.S.C. § 371 (Count 1); access device fraud in violation of 18 U.S.C. § 1029(a)(2) (Counts 2 through 7); identity theft in violation of 18 U.S.C. §§ 1028(a)(7) and (b)(1)(D) (Counts 8 through 11); and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) (Counts 12 through 16).  The four counts of identity theft and five counts of aggravated identity theft are most relevant to this appeal.  The identity theft counts

3

charged that Bonilla obtained the social security numbers of four victims (T.J.M., P.S., J.S., and H.T.) with the intent to commit access device fraud.  The five counts of aggravated identity theft charged that during and in relation to access device fraud, Bonilla opened and used credit cards obtained in the aforementioned four victims' names (T.J.M, P.S., J.S., and H.T.) and in the name of a fifth victim (M.J.) whose social security number was not mentioned in the identity theft charges.

On January 9, 2008 Bonilla pled guilty to all 16 counts before the Honorable Paul C. Huck of the Southern District of Florida.  At the change of plea hearing Bonilla stated that he was a college graduate and had been treated for bipolar disorder and alcoholism.  He confirmed that he had been receiving his medication in prison and that he was not currently under the influence of any substances. Defense counsel stated that he believed Bonilla was capable of understanding the proceedings and participating in his defense. The government then made the following proffer:

> [W]hile traveling extensively throughout the United States and overseas [Bonilla] would install and hide a commercially available software program capable of recording and later transmitting key strokes [sic] on computers located in hotel business centers . . . Bonilla used that software to illegally obtain log-in names, passwords, account data and other personal and financial information of hotel guests using those computers

4

without their knowledge or consent . . . . Such techniques [and others] resulted in defendant obtaining hundreds of personal identification information belonging to others. [Bonilla] using stolen personal identification information and financial information used Internet and telephone to access payroll investment banking and other financial and personal accounts belonging to others.  Once he had access to the accounts he diverted or transferred funds from those accounts to credit cards, debit cards, prepaid cards, bank and investment accounts he had created in his name and/or in the names of those whose personal identification information he obtained without their knowledge or approval . . . . [Bonilla] used the stolen funds and unauthorized credit and debit cards to purchase expensive electronics and personal luxuries and to pay for domestic and international travel.

(Plea Hr'g Tr. at 16-18.)

The probation officer subsequently prepared a presentence investigation report ("PSI") recommending a sentence in the guideline range of 108 to 135 months' imprisonment for Counts 1 through 11.  The probation officer noted that Count 12 carried a two-year consecutive term, and that Counts 13 through 16 could run concurrently at the discretion of the court.

On April 11, 2008 Bonilla was sentenced.  The court's oral pronouncement of the sentence was as follows: 60 months[1] each on Counts 1 through 11, to run

---

[1]  There does appear to be a scrivener's error in the transcript.  During sentencing, the court reporter transcribed the sentence as "16 months as to Count 1 . . ." (Sent. Hr'g Tr. at 86.) However, earlier in the proceeding the court confirmed that the sentence was 60 months as to Count 1 and repeated that the total sentence was 108 months: ". . . a total of 108 months, 60 plus 24 plus 24." (Id. at 85.)

concurrently; 24 months on Count 12, to run consecutively; and 24 months each count for Counts 13 through 16, to run concurrently to each other but consecutively to the other sentences imposed.[2] Thus, the total sentence was 108 months imprisonment. The written judgment and conviction, however, noted the sentence as 84 months imprisonment: 60 months as to Counts 1 through 11, running consecutively with 24 months as to Counts 12 through 16, which run concurrently to each other.

## II. LEGAL STANDARD

We review sentencing arguments raised for the first time on appeal for plain error. United States v. Aguillard, 217 F.3d 1319, 1320 (11th Cir. 2000). In order to find plain error, "(1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights." Id. Moreover, under Federal Rule of Criminal Procedure 52(b) the decision to correct the forfeited error is within the sound discretion of the court of appeals, and we should only exercise that discretion if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732 (1993)

---

[2] Later the court described the sentence for Counts 13 through 16 as "an additional 24 months to run consecutively with regard to Count 13, and no additional time to run consecutively with regard to 14, 15, 16." (Sent. Hr'g Tr. at 87.) This language imposes the same sentence of 24 months imprisonment and therefore the difference in wording is not material.

(citations omitted).

We review the sentence imposed by the district court for reasonableness under an abuse of discretion standard. Gall v. United States, 128 S. Ct. 586, 597 (2007). "When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guideline range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness." Id. (citation omitted).

Finally, a district court's determination of the amount of loss for sentencing purposes is reviewed for clear error. United States v. Manoocher Nostrati-Shamloo, 255 F.3d 1290, 1291 (11th Cir. 2001).

### III. DISCUSSION

#### A. *Constitutionality of Plea*

Bonilla first argues that his plea is invalid because he did not fully appreciate the consequences of his plea as required by Federal Rule of Criminal Procedure 11. Specifically, Bonilla claims that the court failed to advise him of the mandatory minimum sentence for Counts 12 through 16 and failed to confirm his plea was voluntary in light of his bipolar disease. The government responds that any failure to comply with Rule 11 did not affect Bonilla's substantial rights. We agree.

7

Because the Rule 11 violations were not raised at trial, we review for plain error. United States v. Vonn, 535 U.S. 55, 58-59 (2002). However, a failure to comply with Rule 11 that "does not affect substantial rights shall be disregarded." Id. (quoting Rule 11(h)).

First, Bonilla knew of and did not object to the two year mandatory minimum sentence for Counts 12 through 16 (which amounts to an enhancement sentence for the convictions under Counts 2 through 7). The PSI clearly laid out the penalties for Counts 12 through 16 and Bonilla did not file an objection to the PSI, nor did he attempt to withdraw his plea. In fact the court went over the PSI at the sentencing hearing and Bonilla did not object to the statutory minimum at that time either. Any error is therefore harmless.

Second, we reject Bonilla's claim that the court failed to conduct the requisite "searching inquiry" into his mental state. At the plea hearing the court asked Bonilla if his bipolar disease was causing him any problems. Bonilla responded, "[n]o. I have been given medicines by the Bureau of Prisons on a daily basis." (Plea Hr'g Tr. at 3.) The court further advised Bonilla to let the court know if he had "any problems in that regard." (Id.) Moreover, Bonilla's counsel assured the court that Bonilla was "certainly able to go forward." (Id. at 4.) The record supports the district court's finding that Bonilla's plea was knowing and

8

voluntary.

**B.    *Double Jeopardy***

Bonilla next asserts that his convictions under §§ 1028(a)(7), 1028A(a)(1) and 1029(a)(2) violate the double jeopardy clause because they constitute multiple punishments for the same act.  Because Bonilla did not advance a double jeopardy argument before the district court, we review for plain error.  Aguillard, 217 F.3d at 1320.

The double jeopardy clause of the Fifth Amendment provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  Specifically, the double jeopardy clause protects "against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."  Brown v. Ohio, 432 U.S. 161, 165 (1977) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (footnotes omitted)).  Because this case involves a single prosecution, only the third prong of double jeopardy protection is relevant.

The government argues that the entering of a guilty plea waives any challenge to the convictions as violating the prohibitions of double jeopardy.  On the facts of this case we disagree.

9

## I. *Waiver*

Generally, entering a guilty plea waives a defendant's right to all non-jurisdictional challenges to a conviction. United States v. Smith, 532 F.3d 1125, 1127 (11th Cir. 2008) (citing United States v. Reynolds, 215 F.3d 1210, 1215 (11th Cir. 2000)). There are, however, a few exceptions to this rule. Id. In certain circumstances, a double jeopardy challenge is such an exception. Id. In Menna v. New York, the Supreme Court held that "[w]here the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." 423 U.S. 61, 62 (1975) (citing Blackledge v. Perry, 417 U.S. 21, 30 (1974)). In a footnote, the Court explained that a guilty plea establishes factual guilt and therefore all constitutional violations which are inconsistent with that factual guilt are waived by a guilty plea. Id. at 63 n.2. But, when the "state may not convict petitioner no matter how validly his factual guilt is established," the constitutional violation is not waived. Id. "A plea of guilty to a charge does not waive a claim that judged on its face the charge is one which the State may not constitutionally prosecute." Id.

Following Menna, this Court held that "a defendant does not waive a double jeopardy challenge when, judged on the basis of the record that existed at the time

10

the guilty plea was entered, the second count is one the government may not constitutionally prosecute." Smith, 532 F.3d at 1127 (citing United States v. Kaiser, 893 F.2d 1300, 1302 (11th Cir. 1990)). In other words, a defendant *may* challenge his conviction if he does not need to go outside what was presented at the plea hearing to do so. United States v. Broce, 488 U.S. 563, 575-76 (1989).

For example, in Kaiser, the defendant pled guilty to both tax evasion and the lesser included offense of filing false tax returns. Kaiser, 893 F.2d at 1301-02. Kaiser appealed, arguing that imposing cumulative punishments for both offenses violated his double jeopardy protections. Id. On appeal, we held that because "whether the false return counts described in the indictment against Kaiser were lesser included offenses of the tax evasion counts can be determined from the face of the indictment . . . Kaiser's guilty plea did not waive his double jeopardy claim." Id. at 1303.

Conversely, in Broce and United States v. Allen, it was held that the defendants *did* waive their double jeopardy challenges by pleading guilty to indictments that, on their face, described separate offenses. In Broce the defendants were indicted for two distinct conspiracies. 488 U.S. at 575-76. Even though the defendants in that case argued that the distinct conspiracies described in the indictment "were actually smaller parts of one overarching conspiracy,"

11

because the indictment on its face alleged two distinct conspiracies, the defendants' guilty pleas admitted guilt for two conspiracies rather than one. Id. The defendants could not prove that the two conspiracies were actually one without contradicting the indictment. Id. at 576.

Similarly, in Allen, the defendant pled guilty to one count of transporting a stolen Ferrari and one count of transporting a stolen Porsche. 724 F.2d 1556, 1557 (11th Cir. 1984). On appeal, the defendant argued that both cars were transported as part of a single shipment and therefore the two counts "constituted a single offense for which he could receive only a single sentence under the double jeopardy clause." Id. at 1557-58. We disagreed. As the defendant did not present any evidence at the plea hearing that the two cars were shipped as part of a single shipment, he could not prove his claim by relying solely on the existing record. Id. at 1558. Thus, we held that he had waived his right to assert double jeopardy. Id.

Accordingly, in this case we must look to the record that existed at the time Bonilla entered his guilty plea to determine whether the government could constitutionally prosecute Bonilla for all counts. To answer this question we must determine whether his convictions under §§ 1028(a)(7), 1028A(a)(1), and 1029(a)(2) violate the double jeopardy clause's protection against multiple punishments for the same offense and whether proof of those violations is

12

inconsistent with the record that existed at the time of the plea.

### ii. Double Jeopardy

We hold that Bonilla did not waive his right to challenge his convictions under §§ 1028(a)(7) and 1028A(a)(1) and that his convictions and punishments for those offenses violated the protections of double jeopardy. However, we find that Bonilla's convictions and punishment for § 1029(a)(2) *do not* violate the protections of double jeopardy. We address §§ 1028(a)(7) and 1028A(a)(1) first.

#### a. §§ 1028(a)(7) and 1028A(a)(1)

To determine whether Bonilla's convictions under 18 U.S.C. §§ 1028(a)(7) and 1028A(a)(1) violate the protection of the Fifth Amendment we must first determine whether the legislature authorized cumulative punishments for both offenses. If the legislature's intent is unclear we then apply the "same elements" test. Finally, we must determine whether the facts in the record are inconsistent with a double jeopardy violation.

##### 1. Legislative History

The protection against multiple punishments for the same offense is "designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." Kaiser, 893 F.2d at 1304 (quoting Ohio v. Johnson, 467 U.S. 493, 499 (1984)). "If the statutes under which the defendant was

13

sentenced specifically authorize cumulative punishments for the same offense, a court may impose cumulative punishment without running afoul of the Double Jeopardy Clause." Id. (citations omitted); see also Garrett v. United States, 471 U.S. 773, 778 (1985) ("Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense."). If the statute does not clearly authorize cumulative punishment, however, "the courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial." Brown, 432 U.S. at 165.

In this case, neither statute contains clear and unambiguous legislative language allowing cumulative convictions and punishments for the same act of the defendant. The legislative history of § 1028A discusses both statutes and authorizes cumulative sentences in some instances, but *does not* authorize cumulative sentences for violations of §§ 1028(a)(7) and 1028A(a)(1).[3]

Since congressional intent is not clear from the statute itself, we must turn to the same elements test laid out in United States v. Blockburger, 284 U.S. 299, 304

---

[3] According to House Report 108-528, § 1028A was enacted to enhance the penalties for "persons who steal identities to commit terrorist acts, immigration violations, firearms offenses, and other serious crimes." H.R. Rep. No. 108-528 (2004). The report states that the statute's "2-year penalty enhancement is in addition to any term of imprisonment for the underlying offense." Id. § 1028(a)(7) is *not* an underlying offense.

14

(1932).

## 2.   *Blockburger* - "*Same Elements*" *Test*

To determine whether the courts have violated the protection of the Fifth

Amendment, we turn to the test set out in <u>Blockburger</u>: "The applicable rule is that,

where the same act or transaction constitutes a violation of two distinct statutory

provisions, the test to be applied to determine whether there are two offenses or

only one, is whether each provision requires proof of a fact which the other does

not." <u>Id</u>. (citing <u>Gavieres v. United States</u>, 220 U.S. 338, 342 (1911)).

We start our <u>Blockburger</u> analysis by examining the statutory elements of

each offense. A person commits identity theft in violation of § 1028(a)(7) if he or

she (1) "knowingly transfers, possesses, or uses"; (2) "without lawful authority";

(3) "a means of identification of another person"; (4) "with the intent to commit, or

to aid or abet, or in connection with, any unlawful activity that constitutes a

violation of Federal law, or that constitutes a felony under any applicable State or

local law." A person commits aggravated identify theft in violation of §

1028A(a)(1) if he or she (1) "knowingly transfers, possesses, or uses"; (2) "without

lawful authority"; (3) "a means of identification of another person . . . or a false

identification document" (4) "during and in relation to any felony violation

15

enumerated in subsection (c).[4]  Section 1029(a)(2), access device fraud, is a felony violation enumerated in subsection (c) and also a violation of federal law.

Reviewing the statutory language, one offense does not require proof of an additional fact that the other does not.  The first three elements of both offenses are identical.  Although the last elements seem different at first glance, both statutes require an unlawful activity in violation of a law; § 1028A just narrows which violations of law trigger that statute.  In other words, while *any* unlawful activity in violation of federal law triggers § 1028(a)(7), § 1028A(a)(1) requires the defendant commit an offense listed in § 1028A(c).  Here, the predicate offense was access device fraud (§ 1029), a violation of both federal law and § 1028A(c).  But regardless of the predicate offense, *any* conduct that would constitute a crime under § 1028A(a)(1) would *also* be a crime covered by the provisions of § 1028(a)(7).  This is a clear example of one act violating two distinct statutory provisions and therefore violating the protection against double jeopardy.

### 3.    *The Record*

Finally, we must determine whether proof of this constitutional violation is inconsistent with the factual guilt established by Bonilla's guilty plea.  See <u>Menna</u>, 423 U.S. at 63, n.2.  It is not.  Based on the record that existed at the time Bonilla

---

[4]  18 U.S.C. § 1028A(c)(4): "any provision contained in this chapter (relating to fraud and false statements), other than this section or section 1028(a)(7))."

entered his plea, the government could not constitutionally prosecute him for both offenses. Neither the indictment nor the testimony at the plea hearing describe two, distinct offenses. First, the indictment noted that access device fraud was the predicate offense for both statutory violations. Second, the indictment charges Bonilla with using the same personal identification information for both offenses.[5] Third, the conduct charged as aggravated identity theft, the opening and use of a Chase credit card, could not be completed without the aforementioned victim's social security numbers; the charged conduct of identity theft. Fourth, the government itself described Bonilla's conduct as "a series of *coordinated actions* designed to illegally obtain the personal identification information of numerous persons and used [sic] that personal identification information to steal funds and services for their own personal enrichment." (Plea Hr'g Tr. at 16) (emphasis added). Finally, the government described the access device fraud underlying both offenses as the installation of a software program that recorded and later transmitted key strokes on computers in hotel business centers.[6] (Id. at 17.)

---

[5] Bonilla was charged with only four counts of identity theft and *five* counts of aggravated identity theft. Count 13, for aggravated identity theft, charges Bonilla with using a credit card obtained in the name of an individual whose social security number was not mentioned in Counts 8 through 11. Therefore Bonilla's charge of double jeopardy only applies to Counts 8 through 11 and Counts 12, 14, 15 and 16. It does *not* apply to Count 13.

[6] The government does state that Defendant used "other techniques to obtain [sic] personal identification information" but the only technique discussed by the government in the record is the use of the key stroke software and because the crimes used the same identification

17

In sum, the record does not establish two distinct offenses.  Bonilla's assertion that he was improperly convicted and punished twice for this single offense does not contradict the indictment.  Further, Bonilla does not need to depend on facts outside the record to prove that his convictions violate the double clause.  Therefore Bonilla has not waived his right to attack his convictions and his convictions and sentences for both §§ 1028(a)(7) and 1028A(a)(1) violate his rights under the double jeopardy clause.

As Congress did not intend Bonilla's conduct to be punishable under both §§ 1028(a)(7) and 1028A(a)(1), we vacate the convictions and sentences under § 1028(a)(7); Counts 8 through 11.  See 28 U.S.C. § 2106; Ball v. United States, 470 U.S. 856, 865 (1985); Kaiser, 893 F.2d 1300 at 1307; Johnson v. United States, 619 F.2d 366, 368 (5th Cir. 1980).[7]  Bonilla's time in prison, however, will remain the same.  His sentence on Counts 8 through 11 of 60 months of imprisonment, runs concurrently to his sentence of 60 months imprisonment on Count 1 and 60 months imprisonment on Counts 2 through 7.

### b.    § 1029(a)(2)

Finally, as discussed above, Bonilla also contends his convictions and

---

information they must have been obtained in the same manner.

[7]   Under Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we are bound by cases decided by the former Fifth Circuit before October 1, 1981.

18

punishment under § 1029(a)(2) violate the double jeopardy clause. There is no merit to that claim. As we vacate all convictions and punishments for § 1028(a)(7) we only address whether the charges for both §§ 1029(a)(2) and 1028A(a)(1) violate Bonilla's double jeopardy protection. Here the legislature specifically authorized cumulative punishment. As discussed above, § 1029(a)(2) is an underlying predicate offense for conviction under § 1028A(a)(1) and the legislative history for § 1028A states that "[t]his 2-year penalty enhancement is in addition to any term of imprisonment for the underlying offense." H.R. Rep. 108-528; see also United States v. White, 296 Fed. Appx. 483, 490 (6th Cir. 2008); United States v. Komolafe, 246 Fed. Appx. 806, 812-13 (3d Cir. 2007). Accordingly, the sentences imposed pursuant to Counts 2 through 7 and Counts 12 through 16 were proper.

## C. *Conspiracy*

Bonilla asserts that the court failed to make specific findings as to the object of the conspiracy in Count 1. The government again responds that the entry of a plea waives any non-jurisdictional defects and thus Bonilla cannot challenge the court's alleged failure to identify the objects of the conspiracy. On this matter, we agree.

Here, the government was not precluded by the Constitution from bringing

Bonilla into court on a conspiracy charge. <u>See</u> <u>Menna v. New York</u> 423 U.S. at 62.

Bonilla already entered a counseled plea of guilty to all four elements of the

conspiracy charge and he cannot now contest the court's findings.

### D.     *Calculation of Loss*

Bonilla also argues that the court improperly determined the amount of loss.

The government responds that the court properly determined the amount of loss

and notes that the amount of loss need only be a reasonable estimate. We review

for clear error. <u>Nostrati-Shamloo</u>, 255 F.3d at 1291.

We have held that loss determination need not "be made with precision."

<u>United States v. Dominguez</u>, 109 F.3d 675, 676 (11th Cir. 1997) (quoting U.S.S.G.

§ 2F1.1, comment (n.8); U.S.S.G. § 2B1.1, comment (n.3)). "A reasonable

estimate of the intended loss will be upheld on appeal." <u>Id.</u>

We find no merit to Bonilla's argument. The court's estimate of the amount

of loss was reasonable based upon this record.

### E.     *Consecutive Sentences*

Bonilla further argues that the court improperly imposed dual consecutive

terms of imprisonment for his offenses: 24 months imprisonment for Count 12 and

24 months imprisonment on Counts 13 through 16. Specifically, Bonilla argues

that the district court failed to consider factors outlined in the comments to

Sentencing Guideline 5G1.2 which list non-exhaustive factors the court should take into account.  These include the nature and seriousness of the underlying offenses, whether the offenses are groupable, and the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).  U.S.S.G. 5G1.2, comment (n.2(B)).  The government responds that the court properly imposed consecutive sentences, as the decision was in the court's discretion.

We review this sentence for abuse of discretion.  Gall, 128 S. Ct. at 597.  A sentence may be procedurally unreasonable and therefore an abuse of discretion if the court commits a significant procedural error such as failing to consider the Guidelines or miscalculating the Guideline range, failing to give due weight to the § 3553(a) factors, or failing to explain the reasoning for a chosen sentence.  Id.  If procedurally reasonable, we then consider the substantive reasonableness of the sentence imposed, taking into account the totality of the circumstances.  Id.  "If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness."  Id.

Bonilla's sentence is both procedurally and substantively reasonable.  First, Bonilla himself concedes that the Guidelines allow for consecutive sentences. Second, the court went through all the 5G1.2 factors.  At sentencing, the court repeatedly expressed its concern over the seriousness of the offenses and discussed

21

and evaluated the 3553(a) factors. Although the underlying offenses were grouped together, the court offered a detailed explanation as to why consecutive sentences were still warranted. The district court's imposition of consecutive sentences were therefore not an abuse of discretion.

## F.    *Written Judgment*

Lastly, Bonilla argues that the sentence should be remanded because there is a material variance between the oral sentence and written judgement and the oral sentence does not control because it was ambiguous. The government agrees that the sentence should be remanded, but argues that the oral sentence is not ambiguous and controls.

"When a sentence pronounced orally and unambiguously conflicts with the written order of judgment, the oral pronouncement governs." United States v. Bates, 213 F.3d 1336, 1340 (11th Cir. 2000). However, "[w]hen there is an ambiguity in the oral sentencing, as opposed to a conflict between the oral pronouncement and the written judgment, it is proper to look to the written judgment to ascertain the court's intentions." United States v. Purcell, 715 F.2d 561, 563 (11th Cir. 1983).

Here, although there was a scrivener's error in the transcript,[8] the oral

---

[8] As discussed in footnote 1, the court reporter transcribed "16 months" instead of "60 months." (Sent. Hr'g Tr. at 86.)

sentence was *not* ambiguous. The court clearly sentenced Bonilla to 108 months

imprisonment:

> [I]t is my view that a sentence at the mid range of the
> guidelines with regard to those offenses . . . 1 through 11
> is appropriate. I am going to impose a 24-month
> consecutive sentence with regard to Count 12, and then
> going to impose an additional 24 months as to 13, 14, 15,
> and 16. It's going to run consecutive to the others, but
> those four will run concurrently, for a total of 108
> months, 60 plus 24, plus 24.

(Sent. Hr'g Tr. at 85.)

The written judgment of 84 months imprisonment, however, does conflict

with this oral pronouncement. Because there is no ambiguity in the oral sentence,

the oral pronouncement governs. We therefore remand to Judge Huck to conform

the written judgment to the oral pronouncement.[9]

## IV. CONCLUSION

For the foregoing reasons we vacate the convictions and sentences on

Counts 8 through 11; affirm on all other convictions and sentences; and remand to

the district court with instructions to conform the written judgment to the oral

pronouncement as modified by this opinion.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

---

[9] We note that Bonilla requests the case be reassigned to a different judge on remand.
We reject Bonilla's request.