UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20897-CR-HUCK/O'SULLIVAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARIO ALBERTO SIMBAQUEBA BONILLA,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court on the Defendant's Motion to Dismiss the Indictment Or, in the Alternative Motion for Discovery, and an Evidentiary Hearing (DE# 91, 12/1/09). This matter was referred to the undersigned by the Honorable Paul C. Huck in accordance with 28 U.S.C. § 636(b). (DE # 115, 2/4/10). Having considered the defendant's motions, the court file and applicable law and having held a non-evidentiary hearing on April 15, 2010, the undersigned respectfully recommends that the Defendant's Motion to Dismiss the Indictment Or, in the Alternative Motion for Discovery, and an Evidentiary Hearing (DE# 91, 12/1/09) be **DENIED**.

## BACKGROUND

The instant prosecution arises from the installation of computer software by the defendant and his wife[1] on computers in the business centers of various hotels in the United States and abroad. The software captured user logins, passwords and other personal information from individuals using the computers at the hotel business centers. The defendant used this information to access payroll, investment, financial,

---

[1] The defendant's wife remains a fugitive from justice.

banking and other personal accounts to transfer funds from these accounts to accounts controlled by the defendant.

In November, 2007, the defendant was charged by indictment with conspiracy to commit an offense against the United Sates, that is, access device fraud, identity theft and aggravated identity theft (Count 1) in violation of 18 U.S.C. § 371, access device fraud (Counts 2-7) in violation of 18 U.S.C. § 1029(a)(2), identity theft (Counts 8 - 11) in violation of 18 U.S.C. § § 1028(a)(7) and 1028(b)(1)(D) and aggravated identity theft (Counts 12-16) in violation of 18 U.S.C. § 1028A. See Indictment (DE# 15, 11/16/07).

On January 9, 2008, the defendant pled guilty to all counts of the indictment without a plea agreement. See Minutes (DE# 32, 1/10/08). The defendant was sentenced to a total of 108 months' imprisonment, three years of supervised release and $353,203.00 in restitution at the sentencing hearing on April 11, 2008. See United States v. Bonilla, 579 F. 3d 1233, 1238 (11th Cir. 2009); Transcript of Sentencing Hearing (DE# 61 at 86-88). However, in the written judgment and conviction, the Court sentenced the defendant to 84 months' imprisonment. Bonilla, 579 F. 3d at 1238; see also, Sentencing Minutes (DE# 53, 4/14/08); Judgment (DE# 54, 4/15/08). The defendant appealed his sentence. On August 18, 2009, the Eleventh Circuit issued an opinion holding that the indictment was multiplicitous and violated the double jeopardy clause. Bonilla, 579 F. 3d at 1237. The Eleventh Circuit also remanded the case to conform the written judgment with the oral pronouncement at sentencing. Id. at 1245.

On December 1, 2009, the defendant filed the instant motion, Defendant's Motion to Dismiss the Indictment Or, in the Alternative Motion for Discovery, and an Evidentiary Hearing (DE# 91, 12/1/09). The defendant also filed exhibits in support of his motion. See Record of Exhibits (DE# 92, 12/1/09). The government filed its

response on December 14, 2009. See Government's Response to Motion to Dismiss Indictment (DE# 94, 12/14/09). The defendant filed a reply on December 28, 2009. See Bonilla's Reply in Support of Motion to Dismiss Indictment or in the Alternative Motion for Discovery and an Evidentiary Hearing (DE# 97, 12/28/09).

At the Court's request the government filed a surreply. See Government's Surreply to Motion to Dismiss Indictment (DE# 100, 1/19/10). On January 27, 2010, the government filed Government's Sealed Supplement to Surreply to Motions to Dismiss Indictment (DE# 109, 1/27/10). On February 1, 2010, Mr. Bonilla filed Bonilla's Supplemental Reply in Support [of] Motion to Dismiss the Indictment (DE# 111, 4/2/10). On March 5, 2010, with the undersigned's permission, the government filed Government's Supplement to Response to Motion to Dismiss Indictment (DE# 135, 3/5/10). Mr. Bonilla filed a response to the government's supplement on April 6, 2010. See "Bonilla's Response in Opposition to Government's Supplemental Reply to Def. Motion to Dismiss Indictment" (DE# 140, 4/7/10). On April 13, 2010, the government filed Government's Reply to Defendant's Response to Government's Supplement to Government's Response to Defendant's Motion to Dismiss Indictment (DE# 144, 4/13/10). On April 15, 2010, the undersigned held a hearing on the instant motion. Following the hearing, the defendant filed a Post Hearing Memorandum (DE# 151, 4/21/10).[2]

## FACTS ALLEGED BY THE DEFENDANT

In May 2007, the defendant installed the aforementioned software on computers at the Las Vegas Hilton Garden Inn (hereinafter "Hilton"). The defendant alleges that

---

[2] Although the Post Hearing Memorandum was filed without leave of Court, the undersigned will consider it in this Report and Recommendation.

Vijay Shanker, an appellate attorney with the Department of Justice in Washington, used a computer at the Hilton to access his E*Trade account and his father's E*Trade account.[3] The defendant, using Mr. Shanker's password and login information, subsequently transferred funds from Mr. Shanker and Mr. Shanker's father's E*Trade accounts to an account the defendant controlled at Washington Mutual, Inc. The defendant alleges that in retaliation, Mr. Shanker used his position at the Department of Justice to manipulate government prosecutors by offering them "things of value" in exchange for prosecuting the defendant.  "[The defendant] asserts that his prosecution was retaliatory and brought in bad faith, because the Government prosecuted him in order to retaliate for the intrusion into Mr. Shanker's accounts." See Defendant's Motion to Dismiss the Indictment Or, in the Alternative Motion for Discovery, and an Evidentiary Hearing (DE# 91 at 38, 12/1/09) (capitalization omitted).

Specifically, the defendant alleges that attorney William Yurek,[4] Senior Counsel for the Computer Fraud Section of the Department of Justice, "knowingly concealed Mr. Shanker as a victim [of the defendant] and had first hand knowledge of the 'thing of value' offered to the prosecutor in [this case]." See Defendant's Motion to Dismiss the Indictment Or, in the Alternative Motion for Discovery, and an Evidentiary Hearing (DE# 91 at 13, 12/1/09) (capitalization omitted). The defendant maintains that Mr. Yurek

---

[3] The government has confirmed that Mr. Shanker is an attorney with the Appellate Section, Criminal Division, Department of Justice and that Mr. Shanker and Mr. Shanker's father's E*trade accounts were subject to unauthorized withdrawals in mid-2007.  See Government's Response to Motion to Dismiss Indictment (DE# 94 at 5 n. 5, 12/14/09).

[4] Mr. Yurek assisted Richard Boscovich, the Assistant United States Attorney who prosecuted the defendant, with the defendant's prosecution and represented the government at the defendant's change of plea hearing. See Record of Exhibits (DE# 92 at Exhibit D, 12/1/09).

brought in the Department of Defense through the Defense Criminal Investigative Services ("DCIS"). Special Agent Jim Olmstead is an employee of DCIS.[5] With respect to Mr. Olmstead, the defendant speculates that:

> At this point it is unclear the level of involvement . . . Olmstead . . . had, probably he was investigating the diversion of funds in the DFAS payroll and was dragged into this mess by the U.S. Attorney's [Office] in Washington so the name "Pentagon Hacker" could be the smoke curtain Washington was looking to hide the real motive of [the defendant's] prosecution.

Id.[6] The United States Postal Service was also involved in the investigation. According to the defendant, the United States Postal Service was brought in "to hide the lack of jurisdiction of DCIS." Id. at 12.

The defendant claims that Richard Boscovich, then an Assistant United States Attorney, undertook the prosecution of the defendant in exchange for assistance in obtaining a job with Microsoft Corporation.[7] According to the defendant, Mr. "Boscovich was offered from the [C]omputer [F]raud [D]ivision an opening in Microsoft Corp. that needed the endorsement of the Computer Fraud Section, as long as he would not disclose the existence of an official victim [Mr. Shanker], and would exercise his discretion according to the orders from Washington as to the indictment, conviction and sentencing of [the defendant]." See Defendant's Motion to Dismiss the Indictment Or, in the Alternative Motion for Discovery, and an Evidentiary Hearing (DE# 91 at 14,

---

[5] Mr. Olstead was the case agent assigned to this matter.

[6] The undersigned is at a loss as to the defendant's references to "DFAS" and "Pentagon Hacker." The term "DFAS" is likely a reference to the Defense Finance and Accounting Service.

[7] The defendant does not provide the Court with any evidence to suggest that Microsoft derived any benefit from the defendant's prosecution and conviction.

5

12/1/09) (capitalization omitted). The defendant reasons that because Mr. Boscovich presently works for Microsoft "as a 'senior attorney for Microsoft's internet safety team' . . . it necessarily follows that he indicted, convicted, sentenced [the defendant] according to Mr. Shanker's wishes." Id. (capitalization omitted). The defendant further alleges that Mr. Boscovich hid from the Court the fact that he was receiving "things of value" in exchange for the prosecution of the defendant in order "to influence, obstruct [and] impeded the due administration of justice." Id. at 15.

## **DISCUSSION**

The defendant seeks to dismiss the indictment and alleges that his due process rights were violated by the following government acts: (1) malicious prosecution; (2) vindictive prosecution; (3) prosecutorial misconduct; (4) interested prosecutor; (5) conflict of interest by the government; (6) and fraud upon the Court. See Defendant's Motion to Dismiss the Indictment Or, in the Alternative Motion for Discovery, and an Evidentiary Hearing (DE# 91, 12/1/09); "Bonilla's Response in Opposition to Government's Supplemental Reply to Def. Motion to Dismiss Indictment" (DE# 140 at 5, 4/6/10). These violations all stem from Mr. Shanker's alleged initiation of the defendant's prosecution in retaliation for being victimized by the defendant and Mr. Boscovich's alleged agreement to prosecute the defendant in exchange for obtaining a job at Microsoft.

The instant motion should be denied because the defendant's guilty plea waived any right to raise the issue of prosecutorial misconduct at this stage in the proceedings. Even if the Court were to conclude that no waiver has occurred, the defendant's motion should still be denied because he has failed to show that he would be entitled to the relief requested.

**1.    Waiver**

"Generally, entering a guilty plea waives a defendant's right to all non-jurisdictional challenges to a conviction." Bonilla, 579 F. 3d at 1240; see also United States v. Meacham, 626 F. 2d 503, 509 (5th Cir. 1980) (noting that "[b]y pleading guilty, a defendant waives many of the objections to his conviction that he otherwise could have raised on appeal.").[8] As the Supreme Court explained:

> A guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

Tollett, 411 U.S. at 267. "Whether a claim is jurisdictional depends on whether the claim can be resolved by examining the face of the indictment or the record at the time of the plea without requiring further proceedings." United States v. Tomeny, 144 F. 3d 749, 751 (11th Cir. 1998) (citation and quotation marks omitted). In United States v. Fairchild, the defendant raised several challenges to his conviction "including claims that: (1) the indictment was duplicitous and vague; (2) **the actions of the Assistant United States Attorney constituted prosecutorial vindictiveness**; and (3) there was an insufficient factual basis to support the indictment." 803 F. 2d 1121, 1124 (11th Cir. 1986) (per curiam) (emphasis added). The Eleventh Circuit found that "these claims [we]re all nonjurisdictional, and, as such, [we]re waived by [the defendant's] knowing and voluntary guilty plea." Id. (citation and quotation marks omitted). Similarly here, the defendant's guilty plea served as a waiver of his challenges to the indictment. See

---

[8] The Eleventh Circuit in Bonner v. City of Prichard, 661 F. 2d 1206, 1207 (11th Cir. 1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

United States v. Cothran, 302 F.3d 279, 286 (5th Cir. 2002) (noting that a "[guilty] plea waives claims of governmental misconduct during the investigation and improper motives for prosecution"); United States v. Owens, 996 F. 2d 59, 60 (5th Cir. 1993) (per curiam) (holding that defendant who had entered a guilty plea waived arguments that "he was being prosecuted in federal court solely to enhance his punishment" and that "the federal prosecutor chose to prosecute him in federal court because of his race").

**2.     Merits of the Defendant's Claims**

Alternatively, even if the Court were to conclude that the defendant's guilty plea was not a waiver, the defendant's motion should be denied. "As a general rule, the courts are not free to interfere with the prosecuting officer's discretionary decision to prosecute crime." United States v. Spence, 719 F.2d 358, 361 (11th Cir.1983) (per curiam). A federal prosecutor enjoys broad discretion in carrying out his or her duty to enforce criminal statutes. "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). As the Supreme Court explained:

> The Attorney General and United States Attorneys retain "broad discretion" to enforce the Nation's criminal laws. They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to "take Care that the Laws be faithfully executed." As a result, "[t]he presumption of regularity supports" their prosecutorial decisions and, "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."

United States v. Armstrong, 517 U.S. 454, 464 (1996) (internal citations omitted).

"Because a claim of vindictive prosecution asks a court to exercise judicial power over a

special province of the Executive, courts must begin from a presumption that the government has properly exercised its constitutional responsibilities to enforce the nation's laws. This presumption of regularity in prosecutorial decision making can only be overcome by clear evidence to the contrary. The standard of proof is a demanding one." United States v. Jarrett, 447 F. 3d 520, 525 (7th Cir. 2006) (citation and quotation marks omitted); see also United States v. Sanders, 211 F. 3d 711, 716 (2d Cir. 2000) (noting that the decision to indict is "presumed legitimate.").

Claims of prosecutorial vindictiveness are analyzed on a case by case basis. Spence, 719 F.2d at 361. "Each claim of prosecutorial vindictiveness gives rise to a different analysis based on the unique facts of the individual case." Id. (citation omitted). The scenario advanced by the defendant in the instant case does not fit into an ordinary[9] vindictive prosecution claim. "The typical vindictive prosecution claim is based

---

[9] The actions described by the defendant may also form the basis of a selective prosecution claim. United States v. Chalmers, 474 F. Supp.2d 555, 568-570 (S.D. N.Y. 2007) (treating vindictive prosecution and selective prosecution as separate claims). "The requirements for a selective-prosecution claim draw on ordinary equal protection standards. The claimant must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." Armstrong, 517 U.S. at 465 (citation and quotations omitted); see also United States v. Smith, 231 F. 3d 800, 809 (11th Cir. 2000) (noting that in a selective prosecution case, the defendant must show: (1) "that similarly situated individuals were not prosecuted" and that "the difference in treatment, or selectivity of the prosecution, was motivated by a discriminatory purpose."). In this case, the alleged discriminatory purpose was retaliation against the defendant for defrauding Mr. Shanker and Mr. Shanker's father. See United States v. Lamberti, 847 F. 2d 1531, 1535 n. 12 (11th Cir. 1988) (noting that "[t]here is some authority to indicate that 'personal vindictiveness on the part of a prosecutor or the responsible member of the administrative agency recommending prosecution" may suffice to satisfy the second element of [a selective prosecution claim]'"). "To prevail on a selective prosecution claim, a defendant must make a prima facie showing that he has been singled out for prosecution while others similarly situated and committing the same acts have not been prosecuted. After making this prima facie showing, he must show that the government prosecuted him invidiously or in bad faith." United States v. Pleasant, 730 F. 2d 657, 663 (11th Cir. 1984) (citations omitted). "An evidentiary hearing is not automatically required; instead, the defendant

on the enhancement of charges in response to a defendant's exercise of a legal right, most often a procedural right in connection with the defendant's prosecution." United States v. Napue, 834 F.2d 1311, 1330 (7th Cir. 1987). "Vindictiveness in this context means the desire to punish a person for exercising his rights." United States v. Barner, 441 F. 3d 1310, 1315 (11th Cir. 2006) (citing United States v. Goodwin, 457 U.S. 368, 372 (1982)). Here, the defendant did not exercise any constitutional right prior to the commencement of the proceedings against him. Nonetheless, courts have recognized that the initiation of the prosecution may itself be a basis for a vindictive prosecution claim. See Napue, 834 F. 2d at 1330 ("acknowledg[ing] that under some circumstances the mere filing of an indictment might form the basis for [a vindictive prosecution] claim").

"To establish prosecutorial vindictiveness, a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." United States v. Wilson, 262 F. 3d 305, 314 (4th Cir. 2001). See also Barner, 441 F. 3d at 1322 (citing Wilson for elements of prosecutorial vindictiveness). "It is generally agreed that a finding of actual vindictiveness requires direct evidence, such as evidence of a statement by the prosecutor, which is available only in rare cases." United States v. Dwyer, 287 F. Supp. 2d 82, 89 (D. Mass. 2003) (quotations omitted) (citation omitted).

---

must present facts sufficient to create a reasonable doubt about the constitutionality of a prosecution." United States v. Silien, 825 F. 2d 320, 322 (11th Cir. 1987) (per curiam) (citation and quotation marks omitted). To the extent the defendant is pursing a selective prosecution claim, this claim fails because the defendant cannot show that similarly situated individuals were not prosecuted. See United States v. Webster, 162 F.3d 308, 334 (5th Cir. 1998) (no selective prosecution where defendant had "not even attempted to show that other similarly situated individuals committing similar acts were not prosecuted").

Here, there is no evidence that Mr. Shanker or someone on Mr. Shanker's behalf influenced Mr. Boscovich's independent decision to seek a federal indictment against the defendant. The defendant has no evidence that Mr. Shanker learned of the defendant's identity prior to the indictment,[10] that Mr. Shanker or someone on Mr. Shanker's behalf communicated with Mr. Boscovich or any other individual responsible for bringing the instant prosecution against the defendant or offered anyone "things of value" as an incentive for bringing the instant action against the defendant. The defendant's allegations do not rise above speculation. The fact that Mr. Boscovich obtained a job at Microsoft following the defendant's conviction is not enough to meet the defendant's burden. See United States v. Falcon, 347 F.3d 1000, 1005 (7th Cir. 2003) (denying request for evidentiary hearing on vindictive prosecution claim and noting that "evidence of suspicious timing alone does not indicate prosecutorial

---

[10] The defendant argues that Mr. Shanker knew that the defendant had defrauded him because "when a person is faced with intrusion in an online account (like the ones in E*Trade) the name of the person, on the receiving account (where the wire goes) appears everywhere, in this particular case Bonilla's name appeared everywhere in Shanker's online accounts."  See Bonilla's Reply in Support of Motion to Dismiss Indictment or in the Alternative Motion for Discovery and an Evidentiary Hearing (DE# 97 at 16, 12/28/09) (capitalization omitted). Similarly, the defendant argues that E*Trade would have required Mr. Shanker to sign an affidavit stating that the beneficiary of the withdrawals (the defendant) was unknown to Mr. Shanker. Id. at 17. Notwithstanding the defendant's allegations, the government has presented evidence that the defendant's name was not disclosed in the unauthorized transfers made from Mr. Shanker and Mr. Shanker's father's E*trade accounts. See Affidavit of James E. Olmstead (DE# 100-1 at 2-3, 1/19/10). In fact, the account which the defendant transferred the funds to was under the name Maria Saldarriaga. The defendant further argues that one withdrawal was made through a fax to E*Trade. See Bonilla's Reply in Support of Motion to Dismiss Indictment or in the Alternative Motion for Discovery and an Evidentiary Hearing (DE# 97 at 17, 12/28/09). Mr. Olmstead's affidavit states that E*Trade received multiple fax requests, that the fax requests contained illegible signatures and did not reflect the defendant's name. See Affidavit of Olmstead (DE# 100-1 at 2-3). In any event, there is no evidence that E*Trade shared this fax with Mr. Shanker.

animus"). The defendant must have more than an unsubstantiated suspicion that prosecutorial misconduct occurred in the instant case. Additionally, the defendant has produced no evidence that he would not have been prosecuted but for some animus on the part of Mr. Shanker. Absent some evidence that the instant prosecution was brought with genuine animus to punish the defendant or retaliate against him for transferring funds out of Mr Shanker and Mr. Shanker's father's E*trade accounts, the defendant is not entitled to discovery or an evidentiary hearing on his claim of vindictive prosecution. See Sanders, 211 F. 3d at 717 (finding standard for obtaining discovery in a vindictive prosecution case was the same as in a selective prosecution case, that is, "a defendant must provide 'some evidence tending to show the existence of the essential elements of the defense' and noting that the standard was "a 'rigorous' one."); United States v. Lanoue, 137 F. 3d 656, 665 (1st Cir. 1998) (noting that "generally where a defendant can point to specific facts that raise a likelihood of vindictiveness a district court must grant an evidentiary hearing on the issue"); United States v. Heidecke, 900 F. 2d 1155, 1160 (7th Cir. 1990) (noting that "[t]o be entitled to a hearing on a claim of vindictive prosecution, the defendant must offer sufficient evidence to raise a reasonable doubt that the government acted properly in seeking the indictment" and that "[a] showing of a colorable claim that is essential to compel discovery."); United States v. Dean, 119 F. Supp. 2d 81, 84 (D. Conn. 2000) ("Absent 'some evidence' that this federal prosecution was brought with 'genuine animus' to punish the defendant or retaliate against him based on his decision to decline the state prosecutor's plea offer, [the defendant was] not entitled to discovery or an evidentiary hearing on his claim of vindictive prosecution."). Moreover, the dismissal of an indictment is an "extreme sanction which should be infrequently utilized." United States v. Sims, 845 F.2d 1564,

1569 (11th Cir. 1988). Accordingly, the defendant's motion should be denied on the merits.

The defendant argues that a presumption of vindictiveness applies in the instant case. See Post Hearing Memorandum (DE# 151 at 17, 4/21/10). "Due to the difficulty of presenting direct evidence to the Court, [the defendant] asserts that . . . this is one of the rare cases in which the presumption of vindictiveness is triggered." Id. The defendant reasons that "if the Department of Justice prosecutes a crime in which a prosecutor has been a victim, and does not disclose this fact to the Court so appropriate measures can be taken it is more likely that than not [that] the prosecution will be vindictive." Id. According to the defendant, because the presumption of vindictiveness applies, the burden is on the government to prove that it did not prosecute the defendant for an improper reason.

In certain limited circumstances, vindictiveness may be presumed. See North Carolina v. Pearce, 395 U.S. 711 (1969) (finding a presumption of vindictiveness where judge imposed a more severe sentence after a new trial); Blackledge v. Perry, 417 U.S. 21, 27-28 (1974) (extending presumption of vindictiveness to prosecutor's decision to file additional charges after defendant successfully appealed his conviction); but see United States v. South, 295 Fed. Appx. 959, 967 (11th Cir. 2006) (per curiam) (noting that "[a]lthough there is a presumption of vindictiveness that arises when new charges are brought post-trial, there is no such presumption in the pretrial context.").

The presumption of vindictiveness has been applied "only in cases in which a reasonable likelihood of vindictiveness exists." Goodwin, 457 U.S. at 373; see also United States v. Stokes, 124 F.3d 39, 45 (1st Cir. 1997) (noting that "courts should go very slowly in embracing presumptions of prosecutorial vindictiveness in pretrial

13

proceedings."). "A mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule." Goodwin, 457 U.S. at 384. "Where there is no such reasonable likelihood [of vindictiveness], the burden remains upon the defendant to prove actual vindictiveness." Alabama v. Smith, 490 U.S. 794, 799-80 (1989). The instant motion and other documents submitted by the defendant do not establish circumstances from which the Court could reasonably infer a realistic likelihood of vindictiveness. Accordingly, the presumption does not apply here. See Walker v. United States, No. CV109-036, 2010 WL 55472 at *8 (S.D. Ga. Jan. 7, 2010) (finding no caselaw "where a Court applied Blackledge [presumption of vindictiveness] to a decision to initiate prosecution."). Because the presumption of vindictiveness does not apply in the instant case, the defendant must establish actual vindictiveness. See South, 295 Fed. Appx. at 967. As stated above, the defendant has not made a sufficient showing to entitle him to discovery, an evidentiary hearing or dismissal of the indictment. See Dean, 119 F. Supp. 2d at 84 (noting that "[a]bsent 'some evidence' that this federal prosecution was brought with 'genuine animus' to punish the defendant or retaliate against him based on his decision to decline the state prosecutor's plea offer, [the defendant was] not entitled to discovery or an evidentiary hearing on his claim of vindictive prosecution."). Accordingly, the instant motion should be denied.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Defendant's Motion to Dismiss the Indictment Or, in the Alternative Motion for Discovery, and an Evidentiary Hearing (DE# 91, 12/1/09) be **DENIED** in its entirety.

Pursuant to 28 U.S.C. §636(b)(1)(B) and (C), the parties may serve and file written objections to this Report and Recommendation with the Honorable Paul C.

Huck, United States District Judge, within fourteen (14) days of receipt of a copy of this Report and Recommendation. Failure to file objections timely shall bar the parties attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir.1988), cert. denied, 488 U.S. 958, 109 S.Ct. 397 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir.1993).

DONE AND ORDERED, in Chambers, at Miami, Florida, this **20th** day of May, 2010.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
U.S. District Judge Huck
All Counsel of Record

Copies mailed by Chambers to:

Mario Alberto Simbaqueba Bonilla
78997-004
Federal Detention Center (Miami)
P.O. BOX 019120
Miami, FL 33101